# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re | Case No. 17-30961-WRS |
| | Chapter 7 |
| TIMOTHY THOMAS MCCALLAN, | |
|     Debtor. | |
| | |
| CARLY B. WILKINS, | |
|     Plaintiff, | |
| v. | Adv. Proc. No. 18-03084 |
| JEANNE MCCALLAN, | |
|     Defendant. | |

## MEMORANDUM DECISION

This Adversary Proceeding came before the Court for hearing on October 4, 2021, on the Court's Order to Show Cause directed to Scott D. Widerman dated September 27, 2021. (Doc. 135). Widerman was present in person and by counsel, Orin Odom, III, arguing that sanctions should not be imposed. For the reasons set forth below, the Court disagrees.

## I. FACTS

This Adversary Proceeding is a fraudulent conveyance action by Trustee Carly Wilkins against Defendant Jeanne McCallan, the wife of Timothy McCallan, the Debtor in the underlying bankruptcy case. The Trustee alleges that Timothy McCallan, personally and through his numerous corporate entities, made cash transfers totaling more than $10 million to his wife Jeanne McCallan. Both Jeanne McCallan and Timothy McCallan have been represented by Montgomery, Alabama

lawyer Orin Odom and Melbourne, Florida lawyer Scott D. Widerman, as well as former Montgomery attorney Michael Fritz.

On July 15, 2021, Fritz sent a now infamous email, where he stated that he would commit suicide. In the email, Fritz blamed eleven individuals for bringing him to that state, including the undersigned and Chief Bankruptcy Judge Bess Creswell. Fritz sent the email to approximately 125 individuals, including clients, other attorneys, and the Montgomery Police Department.[1] In addition to setting out Fritz's motive for contemplating suicide, the email was replete with rude, misogynistic, insulting, and obscene attacks against those he blamed for his situation. In the most objectionable part of the email, he disparaged Judge Creswell in particularly vile and misogynistic terms. The Court will not repeat the offensive language used; however, a copy of the email is filed in the Court's record under seal. (Docs. 131 & 132).

Fritz is a former Montgomery lawyer who specialized in bankruptcy practice. As a result of his transmission of the email, proceedings have been initiated against him by the Alabama State Bar. His law license is presently suspended pending further proceedings before the Alabama State Bar; as such, he is not presently authorized to practice law. At the time of his suspension, Fritz had approximately 70 pending bankruptcy matters in this Court, including the instant Adversary Proceeding. While Jeanne McCallan was not named in the email, Fritz complained of the undersigned's treatment of her husband Timothy McCallan in the email. There is no suggestion that Jeanne McCallan had anything to do with the original transmission of the email by Fritz.

Widerman is a Florida lawyer who has been admitted to the bar of the United States District Court for the Middle District of Alabama, *pro hac vice*, pursuant to Local Rule 83.1 of the District

---

[1] The Court was not an initial recipient of the Fritz email.

Court. Widerman has appeared in this Adversary Proceeding as well in the underlying bankruptcy case of Timothy McCallan, Case No. 17-30961, and he represented Timothy McCallan in *Wilkins v. AmeriCorp, Inc., et. al. (In re Allegro Law, LLC)*, Adv. Pro. No. 11-3007. For a *pro hac* admittee, he has made a large number of appearances; however, he has always been joined as co-counsel by either Michael Fritz or Orin Odom. As a *pro hac* admittee, Widerman is subject to the jurisdiction of this Court and is subject to discipline for unethical conduct.

On August 31, 2021, Odom, on behalf of Defendant Jeanne McCallan, filed a Motion to Recuse, citing the July 15 Fritz email. (Doc. 124). The motion made reference to the email but did not attach a copy. On September 20, 2021, Widerman filed a complete and unredacted copy of the email in the instant Adversary Proceeding as Defendant's Exhibit A without moving to file it under seal. (Doc. 131).

On September 21, 2021, the day after the email was filed by Widerman, the Court–acting *sua sponte*–sealed Defendant's Exhibit A from public view due to its objectionable and inappropriate content. (Doc. 132). At the September 22, 2021 hearing on the Motion to Recuse, Widerman argued that the Court's *sua sponte* order sealing his filing was further evidence in support of the Motion to Recuse. Specifically, Widerman stated as follows:

> WIDERMAN: I think this Court has to take that in light of both Section (a) and Section (b) of 28 U.S.C. 455 and realize that Mr. Fritz did not do this within this case. This is exterior to all cases but it's made some very, very unsightly claims and, again, I don't want to read it in the record. I - the fact that the Court sua sponte filed its order stopping the public from seeing it, I think we all agree a layperson seeing what's going on here would have a general problem of a bias.

Doc. 151, Transcript of the September 22, 2021 hearing, p.1.

-3-

Widerman then read the following excerpt from the Fritz email while arguing the Motion to Recuse:

> WIDERMAN: "Judge Sawyer put a man in jail for two-and-a-half years out of spite. He felt that Tim McCallan might have money. He believed the biggest liar in all of the world, Steve Olen."

Doc. 151, Transcript of the September 22, 2021 hearing, p.13.

## II. Law

### A. Jurisdiction

A bankruptcy court has broad authority to regulate and, if appropriate, sanction the conduct of lawyers who appear before it. LBR 1001-2 (incorporating Local Rule 83.1 of the District Court); Rule 9011(c), Fed. R. Bankr. P.; 11 U.S.C. § 105; *Ginsberg v. Evergreen Security, Ltd. (In re Evergreen Security, Ltd)*, 570 F.3d 1257, (11th Cir. 2009) (affirming bankruptcy court's denial of motion to recuse and the bankruptcy court's imposition of sanctions against lawyer); *Parker v. Jacobs*, 485 Fed.Appx. 989 (11th Cir. 2012) (affirming bankruptcy court's disbarment of lawyer), *affn'g*. 466 B.R. 542 (M.D. Ala. 2012). In addition, the Court has inherent authority to control lawyers who appear in cases before it.

### B. Widerman's act of filing an unredacted copy of an email on the public record, containing a vile and misogynistic attack upon a bankruptcy judge, is sanctionable.

The Court's discussion of this issue is divided into three parts. In the first part, the Court will consider what it was that Widerman did that the Court finds sanctionable. In the second part, the

Court will discuss why Widerman's conduct is sanctionable. In part three, the Court will consider defenses raised by Widerman in response to the Court's Order to Show Cause.

### 1. Widerman's Actions

On September 20, 2021, Widerman filed, on the public docket in this Adversary Proceeding, a complete copy of the July 15, 2021 email, sent by now-former co-counsel Michael Fritz, without redaction and without moving to file it under seal. (Doc. 131). The email is replete with insults and recriminations by Fritz against the undersigned, Judge Creswell, and nine other named individuals. Far and away the most objectionable part of the email is a vile and misogynistic insult directed at Chief Bankruptcy Judge Bess Creswell. Fritz's insult to Judge Creswell made reference to a case unrelated to this one. All of the matters involving Timothy and Jeanne McCallan are assigned to the undersigned. While Widerman's reading of Fritz's attack against the undersigned was bad enough, there was no reason to bring Judge Creswell into this as she has no connection to any of these cases, but by filing the unredacted email on the public docket, that is exactly what Widerman did. Widerman's publication of the insult to Judge Creswell was deeply offensive and wholly gratuitous.

The Court is well aware that the email in question was authored and sent by Fritz. It is not the original transmission of the email by Fritz for which Widerman will be held to account.[2] Rather, Widerman cynically and in bad faith used the email in a misguided attempt to manufacture grounds in an attempt to support the Motion to Recuse, which would have further delayed the trial of this Adversary Proceeding. In addition, the Court does not sanction Widerman, or Odom, for filing the Motion to Recuse–though it was filed in bad faith. It is the act of filing the offending email on the

---

[2] Fritz will have to answer for his email in another forum on another day. Today, the Court focuses its attention on Widerman.

-5-

public record, that the Court finds sanctionable. There is a certain "Tom, Dick, and Harry" quality about what counsel for the Defendant have done here; Fritz sent the email, Odom filed the Motion to Recuse (Doc. 124), and Widerman filed the email as Exhibit A in support of the motion. (Doc. 131). However, the Court reiterates that only Widerman's actions precipitated the Order to Show Cause.

### 2. Why Widerman's Actions are Sanctionable.

Widerman's actions run afoul of several Rules of Professional Conduct and Rule 9011 of the Federal Rules of Bankruptcy Procedure. Moreover, the filing of the email was a contempt of court. "A lawyer shall not: . . . (c) Engage in conduct intended to disrupt a tribunal." Rule 3.5, Ala. R. of Pro. Resp. The Official Comments to the Rules contain a Comparison with Former Alabama Code of Professional Responsibility. In the comments it is stated that "with regard to paragraph (c), DR 7-106(B)(2) provided that a lawyer shall not engage in 'undignified or discourteous conduct with is degrading to a tribunal.'" In addition, "it is professional misconduct for a lawyer to: . . . (g) Engage in any other conduct that adversely reflects on his fitness to practice law." Rule 8.4, Ala. R. of Pro. Resp. Rule 9011(b)(1) provides that it is sanctionable to submit a pleading, motion or other paper "for any improper purpose."

It is well established that a lawyer may be sanctioned for an insult to the Court. *Thomas v. Tenneco Packaging Co., Inc.,* 293 F.3d 1306 (11th Cir. 2002) (lawyer sanctioned for *ad hominem* attack against opposing counsel and "insulting and demeaning remarks about the district judge"; *In re Gleason*, 2012 WL 463924, No. 11-62406, (S.D. Fla. Feb. 13, 2012) *aff'd* 492 Fed.Appx. 86 (11th Cir. 2012) (sanctioning lawyer for "unprofessional, rude, insulting and disrespectful" responses to the Court); *Bettis v. Toys "R" Us,* 2009 WL 5206192, No. 06-80334, (S.D. Fla. Dec. 30, 2009) *aff'd*

403 Fed.Appx. 387 (11th Cir. 2010) (imposing monetary sanction of $10,000 and 42-month suspension for personal attacks upon the judge and filing baseless motions to recuse); *Rhodes v. MacDonald*, 670 F.Supp.2d 1363 (M.D. Ga. 2009) (imposing $20,000 monetary penalty for filing frivolous civil action and filing a frivolous motion to disqualify judge containing baseless attacks on the Court).

The Court is shocked that Widerman advanced the argument that the Court's *sua sponte* Order sealing Defendant's Exhibit A constituted sufficient grounds for recusal due to the content of the email. Any objective reader of the email would conclude that its author suffered a severe emotional and psychological breakdown. An objective reader would further conclude that Widerman debased himself by filing an unredacted copy of the email on the public docket. No fair, objective reader of the email would infer anything negative about Judge Creswell, Judge Sawyer, or any of the other individuals named in the email.

By publishing the email on the public record Widerman intentionally caused harm to both Judge Creswell and the undersigned, as well as others disparaged in the email. By sealing the document, the Court sought to minimize the harm caused by the unredacted, public filing. That Widerman would then use this as evidence in support of his motion to recuse is a cynical abuse of the process of this Court.

Furthermore, Widerman's decision to repeat Fritz's insult to Plaintiff's lawyer Steve Olen had nothing to do with the Motion to Recuse; it was intended only to vex, harass, and annoy. Widerman's conduct was rude, insulting, unprofessional, and in the utmost of bad faith. This attack by Widerman is powerful evidence of his bad faith.[3]

---

[3] Olen has represented Trustee Wilkins in a number of proceedings against Timothy McCallan where he was represented by Widerman. The Court has previously admonished Widerman for falsely accusing Olen of lying. Suffice

-7-

### 3. Widerman's defenses are unavailing.

Widerman raises three arguments in defense to the Court's Order to Show Cause. First, he argues that there is no rule prohibiting what he has done. Second, he argues that there is no harm from his actions because the Fritz email was widely distributed before he filed a copy with the Court. Third, he argues that he did this in furtherance of the representation of his client and did not intend any harm. All three are unavailing.

Widerman's first argument, that no rule prohibits using the Court's public docket to republish a vile and misogynistic insult to a sitting United States Bankruptcy Judge is nothing less than outrageous. There are adequate rules to put a lawyer on notice that what he did is wrong. To be sure, the rules are general in nature; however, an ethical lawyer should not need a more specific rule to tell him he may not do what was done here. If Widerman thought that his client needed a copy of the email in the record, he should have filed a heavily redacted copy with a motion to file an unredacted copy under seal. In the alternative, he could have sought the Court's guidance before filing the email. He did neither.

Widerman's second argument is that there was no additional harm resulting from his filing because the Fritz email was widely distributed. It is no doubt true that the email was widely distributed. Widerman claims that Fritz sent the email to 125 recipients, and that from those 125 recipients, the email was then re-transmitted. While the Court does not doubt that Fritz widely distributed the email, or that the email was re-transmitted by its initial recipients, Widerman is incorrect in his assertion that no harm was caused as a result of his filing. By filing the email on the

---

to say, there is bad blood between Olen and Widerman. Widerman's reading of Fritz's statement about Olen at the September 22, 2021 hearing, is an example of an unwarranted attack on an outstanding lawyer by an unethical lawyer.

-8-

Court's public record, the email was subject to wide distribution. Moreover, the insult to the Court is amplified by the fact that the very filing of the unredacted email turned the Court itself into a non-consenting publisher of an insult against itself.

Widerman's third argument is that he claims that he intended no harm to any party when he filed the unredacted email. Having considered the filings made with the Court, and having had the opportunity to observe Widerman in Court for many hours, the Court finds that the opposite is true. Widerman filed the email in a calculated manner with the express purpose of causing harm in an effort to provoke a recusal. While Fritz may have taken leave of his senses and sent the email while in an unhinged state of mind, Widerman's actions were a calculated attempt to exploit his former co-counsel's emotional and psychological breakdown in a bad faith attempt to try his case before a different judge.

The following passage from a case out of the Southern District of Florida is instructive here:

> While civility and good manners should provide their own check to such remarks, they often do not, and there is no redressing such private insults. But here, Mr. Spolter has taken his insults and wild allegations out of the backroom and placed them in court filings and a local tabloid. I saw fit to ignore Mr. Spolter's first round of insults; I believed, as I still do, that they speak more of him than they do of me.

*Bettis v. Toys "R" US*, 2009 WL 5206192, *20 (S.D. Fla. Dec. 30, 2009). The *Bettis* Court recognized the harm done when an insult to a judge is filed in the Court's public record; this Court agrees, and rejects the notion that Widerman intended no harm when he filed the unredacted Fritz email on the public docket.

-9-

### C. The Motion to Recuse

The legitimacy (or lack thereof) of Widerman's action is best understood in the context of the motion to which it relates–the Defendant's Motion to Recuse. (Doc. 124). The stated basis for the motion was the Fritz email. The Fritz email was filed by Widerman as "Exhibit A" to the motion. (Doc. 131). It should be noted that it was Odom who filed the Motion to Recuse, without attaching the offending email. No doubt he recognized the toxic nature of the email and did not want to take responsibility for filing such an obscenity on the Court's record. Perhaps Widerman, knowing that his admission to the bar of this Court was *pro hac,* reasoned that he did not have much to lose–while Odom did not want to risk his law license by making a scurrilous attack on the Court. The Trustee opposed the Motion to Recuse citing the case *United States v. Greenough*, 782 F.2d 1556, 1558 (11th Cir. 1986). The Eleventh Circuit stated in that case that:

> There are twin, and sometimes competing, policies that bear on the application of the Section 455(a) standard. The first is that courts must not only be, but must seem to be, free of bias or prejudice. Thus the situation is viewed through the eyes of the objective person. A second policy is that a judge, having been assigned to a case, should not recuse himself on unsupported, irrational, or highly tenuous speculation. If this occurred the price of maintaining the purity of the appearance of justice would be the power of litigants or third parties to exercise a veto.

*Greenough*, 782 F.2d at 1558.

If a motion such as Defendant's Motion to Recuse were to be granted because her lawyer wrote a nasty email, any litigant would be granted a veto power over her judge, contrary to the rule handed down in *Greenough*.

Defendant Jeanne McCallan cites the case of *In re Moody*, 755 F.3d 891 (11th Cir. 2014), cert. denied 574 U.S. 977 (2014), in support of her motion to recuse. (Doc. 124). In *Moody*, the

-10-

Defendant had been convicted of the murder of Eleventh Circuit Judge Robert Vance. Years after his conviction, Moody moved for post-conviction relief. The *habeas* proceeding was heard by District Judge Scott Coogler, of the Northern District of Alabama. Moody moved to recuse Judge Cooger and later moved to recuse all of the judges on the panel hearing his appeal from the District Court's denial of post-conviction relief. As Moody had murdered, or at least been convicted of murdering, an Eleventh Circuit Judge, he contended that he could not get a fair hearing from either Judge Coogler or any of the panel judges hearing his appeal. The Eleventh Circuit denied the motion to recuse. While the motion was denied and the denial was affirmed on appeal, therefore providing no support for the motion to recuse here, the Court will nevertheless note several key distinctions. First, Moody murdered an Eleventh Circuit Judge and then sought to recuse the judges–contending that they would not be fair. Here, Jeanne McCallan had no hand in the email and there is no reason to believe that the undersigned would attribute its insults and other contents to her. Further, in the instant case, the offending parties are the lawyers. Fritz's law license has already been suspended with further proceedings pending, and the Court is taking action to sanction Widerman for his part in this. Thus, the miscreants are being dealt with, without having any impact on Jeanne McCallan. Second, Moody murdered Judge Vance. As reprehensible as Fritz's and Widerman's actions are, they do not begin to approach the kind of action taken by Moody. A murder and an insult are two quite different things. Third, if Jeanne McCallan really believed that the filing of the email might prejudice her case, she should have fired Widerman and not moved to recuse the undersigned. It would be an anomalous state of affairs if the wrongdoing lawyer were to stay in the case while the judge who was victimized by a scurrilous attack was required to recuse.

The Defendant also cites *United States v. State of Alabama*, 828 F.2d 1532 (11th Cir. 1987) in support of her motion. The District Court's judgment in that case was reversed on a finding that the trial judge had impermissible prior contact with facts which were in dispute. The analysis in *U.S. v. Alabama* was technical and quite detailed. Suffice to say, nothing of the kind is alleged here. The undersigned has had no extrajudicial contact with the Defendant or any of the parties in issue here. While the undersigned has decided a number of matters involving Timothy McCallan, prior judicial proceedings rarely, if ever, provide a basis for recusal. *Liteky v. United States*, 510 U.S. 540, 114 S.Ct. 1147 (1994).

An objective reader of the email and a fair reading of the case law on Motions to Recuse yields the conclusion that the motion was frivolous and the email was not really intended to support a meaningless motion. Rather, the email was intended to insult, injure, and provoke. Widerman's appearance in Court at the October 4 hearing on the show cause hearing was provocative. There is no support for the proposition that a lawyer may insult a judge and his colleague in vile and obscene terms and then insist that the judge recuse because he would not be seen as unbiased after such a vicious attach.

The Eleventh Circuit rejected such a proposition in *In re Evergreen Security,* where a litigant made a vicious and prolonged attack on Judge Briskman. 570 F.3d 1257, 1279 (recognizing that "[r]equiring recusal for all disruptive, recalcitrant and disagreeable commentary would undermine the judiciary"). Widerman was looking to start a fight, which he hoped would result in a recusal and delay of these proceedings.

-12-

## D. What Sanctions Should be Imposed.

Having determined that Widerman's conduct is sanctionable, the Court will next consider what sanctions should be imposed. A monetary sanction is appropriate both to punish Widerman and to deter others from similar conduct. Without a monetary sanction, any out-of-town lawyer who loses a case and does not intend to return could make any manner of insult of the trial judge on his way out the door without consequence. In *Bettis v. Toys "R" US*, the District Court imposed sanctions of nearly $100,000 in attorney's fees, a $10,000 monetary sanction, and a 42-month suspension of the attorney's right to practice law for bad faith conduct and impugning the integrity of the Court in connection with a bad faith Motion to Recuse. 2009 WL 5206192, * 27-28, *aff'd* 403 Fed.Appx. 387 (11th Cir. 2010). In *Rhodes v. MacDonald*, 670 F.Supp.2d 1363 (M.D. Ga. 2009) *aff'd* 368 Fed.Appx. 949 (11th Cir. 2010), the District Court imposed a monetary penalty against a lawyer for $20,000 for making frivolous arguments and disrespectful attacks on the Court.

It should be noted that Widerman had notice that his conduct was offensive and might subject him to sanctions. To begin, he carefully divided responsibilities between himself and Odom, with Odom filing the motion and Widerman filing the exhibit. Each taking the position that their actions alone were not sanctionable. Moreover, Odom's act of filing the motion without attaching the email may be interpreted as an attempt to protect his Alabama law license. Widerman filed the deeply offensive email, perhaps reasoning that his *pro hac* admission was not much of a loss if his *pro hac* admission was revoked.

A further indication that he had offended the Court may be inferred from the fact that the Court, acting *sua sponte*, sealed the exhibit containing the offensive email one day after it was filed. Rather than take the hint that he had transgressed, Widerman doubled down stating "the fact that the

-13-

Court sua sponte filed its order stopping the public from seeing it, I think we all agree a layperson seeing what's going on here would have a general problem of a bias." (Doc. 151, p. 15). Thus, Widerman not only used the Fritz email, but the Court's *sua sponte* order in support of his bad faith argument in support of the motion to recuse.

Odom recently filed a disclosure statement reporting that Widerman had received over $130,000 for representing Timothy McCallan. (Case No. 17-30961, Doc. 391). Presumably, he received a similar amount for representing Jeanne McCallan in this Adversary Proceeding. Bankruptcy Rule 2016(b) requires that attorney's disclose fees received in representing debtors in connection with bankruptcy cases but does not require disclosure of fees paid to represent non-debtors. Therefore, Widerman is not required to disclose what Jeanne McCallan paid him. Suffice to say, Widerman has been paid well for his services in this Court. A $5,000 monetary sanction is not unreasonable here. In addition, Widerman's *pro hac* admission is revoked, effective 14 days from the date of this decision. The Court will refer this matter to the Florida Bar with the request that it consider imposing reciprocal discipline.

### III. Conclusion

The Court is deeply offended at the vile and misogynistic attack against Judge Creswell contained in the document filed by Widerman. While the Court is of the view that the Motion to Recuse, to which Widerman's filing ostensibly relates, was frivolous and should not have been filed, even if one accepts the argument that the motion was at least colorable and that the email was necessary to support the motion, an unredacted copy of email should not have been filed on the Court's public record. The Court concludes that Widerman's purpose in filing the email was to cause

injury and constitutes a bad faith attempt to provoke the Court and further delay the trial of this Adversary Proceeding. By filing an unredacted copy of the email on the Court's public record, Widerman violated Bankruptcy Rule 9011, the Alabama Rules of Professional Responsibility, and he committed an act in contempt of this court. For these reasons, the Court imposes a monetary fine in the amount of $5,000, revokes Widerman's *pro hac* admission to the bar of the Middle District of Alabama, and will transmit a copy of this Memorandum Decision to the Florida Bar with the request that it impose reciprocal discipline. The Court will enter an Order by way of a separate document.

Done this 25th day of October, 2021.

William R. Sawyer
United States Bankruptcy Judge

c: Steve Olen, Attorney for Plaintiff
   Carly B. Wilkins
   Orin Clayton Odom, III, Attorney for Defendant
   Scott D. Widerman, Attorney for Defendant
   Bankruptcy Administrator

-15-

Case 18-03084    Doc 161    Filed 10/25/21    Entered 10/25/21 12:26:08    Desc Main
Document    Page 15 of 15